# No. 15-35683

# UNITED STATES COURT OF APPEAL

# FOR THE NINTH CIRCUIT

TECHNICAL SECURITY INTEGRATION, INC.,

*Plaintiff and Appellee*,

*vs.*

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

*Defendant and Appellant*.

_____

On Appeal From an Order of the U.S. District Court
Denying Arbitration,
District of Oregon, Action No. 3:14-cv-01895-SB
Honorable Michael H. Simon

_____

## APPELLANT'S OPENING BRIEF
_____

JAMES C. NIELSEN
THOMAS H. NIENOW
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
(415) 693-0900
Facsimile (415) 693-9674

*Attorneys for Defendant and Appellant*
PHILADELPHIA INDEMNITY INSURANCE COMPANY

**CORPORATE DISCLOSURE STATEMENT.**
[F.R.A.P. 28(a)(1).]

Appellant Philadelphia Indemnity Insurance Company is a wholly owned subsidiary of Tokio Marine Holdings, Inc., which is a publicly-traded corporation.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................ i

TABLE OF AUTHORITIES ....................................................... iv

I.  JURISDICTION. ................................................................... 1

II. ISSUES PRESENTED. ........................................................ 1

III. FACTS AND PROCEDURAL BACKGROUND. .................... 2

IV. STANDARD OF REVIEW. .................................................. 7

V. SUMMARY OF ARGUMENT ............................................... 8

VI. ARGUMENT ...................................................................... 10

1.  The FAA requires district courts to enforce arbitration
    clauses that are valid and that encompasses a dispute at
    issue. ................................................................................ 10

2.  The validity of the arbitration clause should be
    determined under Oregon or California law, which
    require arbitration under the FAA. ..................................... 12

3.  The district court erred by adopting and applying the
    view of the Washington decision in *Department of
    Transportation* to the McCarran-Ferguson Act and the
    FAA. .................................................................................. 19

    A.   The district court erroneously deferred to the
         Washington Supreme Court's interpretation and
         application of the McCarran-Ferguson Act. ................ 19

    B.   The reasoning in *Department of Transportation*
         does not apply to enforcement of arbitration
         clauses in federal courts. .......................................... 22

C.      The district court erroneously followed
        *Department of Transportation,* in which the
        Washington court incorrectly applied the
        McCarran Ferguson Act.                                    25

VII. CONCLUSION.                                                  28

STATEMENT OF RELATED CASES UNDER CIRCUIT RULE 28-2.6             31

CERTIFICATION OF COMPLIANCE UNDER CIRCUIT RULE 32-1             32

# TABLE OF AUTHORITIES

FEDERAL CASES

*American Sugar Refining Co. v. The Anaconda*,                               10, 27, 30
138 F.2d 765 (5th Cir. 1943), *aff'd*, 322 U.S. 42 (1944)

*Anderson v. Washington Mut. Bank*,                                              13
2010 U.S.Dist.Lexis 124334 (D. Or. 2010)

*Bland v. Fessler*,                                                              21
88 F.3d 729 (9th Cir. 1996)

*Cedar Composting, Inc. v. Ironshore Specialty Ins. Co.*,                        26
2015 U.S.Dist.Lexis 71256 (W.D. Wash. 2015)

*Comedy Club, Inc. v. Improv West Assocs.*,                                    9, 24
553 F.3d 1277 (9th Cir. 2009), *cert. den.*, 555 U.S. 801 (2008)

*Coneff v. AT&T Corporation*,                                                 7, 18
673 F.3d 1155 (9th Cir. 2012)

*Cox v. Ocean View Hotel Corp.*,                                             7, 28
533 F.3d 1114 (9th Cir. 2008)

*Dean Witter Reynolds, Inc. v. Byrd*,                                            12
470 U.S. 213 (1985)

*DeVoto v. Pac. Fid. Life Ins. Co.*,                                             11
516 F.2d 1 (9th Cir. 1975)

*DiMercurio v. Sphere Drake Ins., PLC*,                                      10, 27
202 F.3D 71 (1st Cir. 2000)

*Fields v. Legacy Health System*,                                               13
413 F.3d 943 (2005)

*Frazier v. Citifinancial Corp., LLC*,                                           24
604 F.3d 1313 (11th Cir. 2010)

*Group Life & Health Ins. Co. v. Royal Drug Co.*,                               11
440 U.S. 205 (1979)

*Hoeft v. Rain & Hail, LLC*,                                                  13, 18
2001 U.S.Dist.Lexis 23586 (D. Or. 2001)

iv

*Humana, Inc. v. Forsyth*,                                      9, 21, 25, 26, 29
525 U.S. 299 (1999)

*McKnight v. Chicago Title Ins. Co.*,                           19, 20, 25, 26
358 F.3d 854 (11th Cir.. 2004)

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,           11, 12, 18, 27
460 U.S. 1 (1983)

*Nieves v. Travelers Cas. Ins. Co.*,                                        13
2014 U.S.Dist.Lexis 174941 (C.D. Cal. 2014)

*Ojo v. Farmers Group, Inc.*,                                              20
600 F.3d 1201 (9th Cir. 2001)

*Patenaude v. Equitable Life Assur. Soc'y*,                                21
290 F.3d 1020 (9th Cir. 2002)

*Proctor v. Vishay Intertechnology, Inc.*,                                 21
584 F.3d 1208 (9th Cir. 2009)

*Quackenbush v. Allstate Ins. Co.*,                                        12
121 F.3d 1372 (9th Cir. 1997)

*Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co.*,       10, 21, 25, 29
359 U.S. 65 (1959)

*Simula, Inc. v. Autoliv, Inc.*,                                           12
175 F.3d 716 (9th Cir. 1999)

*Southland Corp. v. Keating*,                                              11
465 U.S. 1 (1984)

*United States v. South-Eastern Underwriters Ass'n*,                       11
322 U.S. 533 (1944)

STATE CASES

*Department of Transportation v. James River Ins. Co.*,                *passim*
176 Wn.2d 390, 292 P.3d 118 (2013)

FEDERAL STATUTES

9 U.S.C. § 1                                                                    1

9 U.S.C. § 2                                                      5, 8, 11, 26, 28

9 U.S.C. § 4                                                                   12

9 U.S.C. § 10(a)(4)                                                         9, 23

9 U.S.C. § 16(a)(1)(A), (B)                                                     1

15 U.S.C. § 77a                                                               21

15 U.S.C. § 80a                                                               21

15 U.S.C. § 1011 et seq.                                                        1

15 U.S.C. § 1012(b)                                                 6, 9, 14, 29

28 U.S.C. § 1332                                                                1

STATE STATUTES

Ga. Code Ann. § 9-9-2(c)                                                   19, 26

Or. Rev. State. § 15.360                                        8, 13, 15, 17, 18, 28

Revised Code of Washington (RCW) § 48.18.200(1)(b)                       *passim*

MISCELLANEOUS

Fed.R.App.P. 4(a)(1)(A)                                                         1

# I. JURISDICTION.

This action falls within the district court's subject-matter jurisdiction because it addresses a dispute between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Defendant and appellant Philadelphia Indemnity Insurance Company appeals from the district court's July 30, 2015, order denying Philadelphia's motion to compel arbitration and to stay further proceedings pending arbitration, and from all interlocutory orders that gave rise to the July 30, 2015, order. This Court has jurisdiction to hear Philadelphia's appeal under 9 U.S.C. § 16(a)(1)(A), (B). Philadelphia filed its notice of appeal on August 27, 2015. The appeal is timely under F.R.A.P. 4(a)(1)(A).

# II. ISSUES PRESENTED.

Where an insured sues its insurer in Oregon alleging coverage for an Oregon judgment in favor of an Oregon resident arising out of tortious conduct in Oregon and California, and its insurance policy requires arbitration of the coverage dispute, does a district court err by applying Washington rather than Oregon or California law to deny the insurer's motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1. (Raised Doc. 10 at 7-8, Doc. 15 at 6-9, Doc. 32 at 7-10; Rejected Excerpts of Record ["ER"] 6, 65-69.)

Does a district court in Oregon err by deferring to a Washington state court's reverse-preemption analysis of the Federal Arbitration Act under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., where the state court's holding turned on the inability of Washington state courts to review the merits of arbitration awards, but where federal courts have

1

greater discretion to review the merits of arbitration awards? (Raised Doc. 32 at 10-16; Rejected ER 6, 70-76.)

Alternatively, does the district court err by deferring to the state court's application of the McCarran-Ferguson Act where the state court has mistakenly construed the Federal Arbitration Act as ousting a court of jurisdiction over arbitrated disputes in direct conflict with federal decisions construing the same Act as maintaining such jurisdiction? (Raised Doc. 32 at 10-16; Rejected ER 6, 70-76.)

## III. FACTS AND PROCEDURAL BACKGROUND.

Plaintiff and appellee Technical Security Integration, Inc., provides electronic-surveillance and security services to Oregon casinos and other clients nationwide. (ER136, 203.) Technical sued one of its former employees, Oregon resident Corey Tharp, along with Tharp's subsequent employer in the U.S. District Court in Oregon. (ER136, 206, ¶5.) Technical alleged that Tharp had breached a non-compete clause in his employment contract and that Tharp's subsequent employer had intentionally interfered with contracts Technical held with the Oregon casinos. (*Id.*)

Tharp counterclaimed alleging that Technical had slandered him and that by doing so Technical had breached Tharp's severance agreement. (ER 206, ¶6.) Tharp based his defamation claims on statements by Technical's President and CEO Craig Swankosky to one of Technical's casino clients that "Tharp 'was let go from [Technical] for time management issues, project management issues, and for falsifying time sheets,'" and that "Tharp 'was being investigated by the Florence [Oregon] Police Department for grand theft' of equipment from

[Technical's] office 'and would probably do jail time.'" (ER 136.) Tharp also alleged that Swankosky had slandered him by telling a representative of a surveillance-equipment manufacturer that "Tharp 'was about to be in some very big trouble,'" that the manufacturer should "'stay clear' of Tharp because of his alleged theft of equipment" from Technical's Oregon office, and that "Tharp 'would never work in the state again.'" (*Id*.)

Evidence in the lawsuit showed that Technical had managed its disputes with Tharp from Technical's headquarters in Ventura, California, by making inquiries responded to by Oregon State Police (ER 87) and following up with a vendor about materials Technical believed Tharp improperly had delivered to his Oregon residence. (ER 88-89.) Several of Technical's personnel also met with another vendor in California "to discuss how the relationship" between Technical and the vendor "could possibly be rebuilt" following Tharp's termination. (ER 91, ¶ 4.) Technical's agent for service of process in California, who is also a co-owner and Chief Financial Officer of Technical, attested to these facts in the lawsuit. (ER 79, 80, ¶1.)

The case went to trial and a jury found that Technical had defamed Tharp and breached his severance agreement, awarding damages on his defamation claims. (ER 137.) The jury also found that Tharp likewise had breached the non-compete clause in his employment contract, though it awarded Technical no damages. (*Id.*)

Technical then demanded reimbursement from its liability insurer, defendant and appellant Philadelphia Indemnity Insurance Company, for the amount of the judgment and for the attorneys fees and costs Technical incurred defending the underlying action. (ER 130.) Technical also

threatened to sue Philadelphia and forwarded with its demand letter an unfiled version of its complaint in this action.  (ER 130-134.)  In response Philadelphia sent a letter to Technical explaining that although Tharp's counterclaims and judgment for slander fell within the policy's definition of covered "personal and advertising injury," that coverage was subject to an exclusion for defamation arising out of any person's employment, the termination of employment, or "[e]mployment-related practices ... including defamation ...."  (ER 146-147.)  Philadelphia explained that the exclusion applies whether the injury-causing event occurs "before employment, during employment or after employment of that person" and "[w]hether the insured may be liable as an employer or in any other capacity ...."  (ER 146.)

Philadelphia also demanded arbitration under a provision in the policy stating as follows:

### BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

* * *

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator.  The two arbitrators will select a third.  If they

4

cannot agree within 30 days, either may request that
selection be made by a judge of a court having jurisdiction.
Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take
place in the county or parish in which the address shown in
the Declarations is located.  Local rules of law as to
procedure and evidence will apply.  A decision agreed to by
two of the arbitrators will be binding.

(ER 147.)  The policy declarations list a post-office box in Snohomish,
Washington—the same post-office box listed for Technical's Snohomish
insurance broker, Insurance Tek, Inc.  (ER 97, 149.)  Still, Philadelphia
agreed to arbitrate the coverage dispute in either Oregon or Washington.
(ER 121-122, 201 n. 1.)  Technical did not respond to Philadelphia's
demand for arbitration.  Instead, it sued Philadelphia in the District of
Oregon—the current action—alleging that Tharp's counterclaims were
not "subject to [the] exclusion under the Policy relating to employment-
related practices, because the alleged statements related to the status of a
pending theft investigation and whether Mr. Tharp was a current
suspect."  (ER 206, ¶7.)

Philadelphia moved to compel arbitration of the parties' coverage
dispute under the Federal Arbitration Act, or "FAA," which states that a
written provision in a contract "to settle by arbitration a controversy
arising out of such contract ... shall be valid, irrevocable, and enforceable
...."  9 U.S.C. § 2.  (Doc. 10.)  Based on the locations of Technical's
coverage suit, the underlying action and judgment, Technical's
headquarters and business operations, and Tharp's status as an Oregon

resident, Philadelphia asserted that the district court was required to apply either Oregon or California law, under either of which the FAA would require arbitration of the dispute here. (Doc. 10 at 7-8; Doc. 15 at 6-9**.**)

Technical opposed arbitration (Doc. 12) by urging the district court to instead apply a provision from the Revised Code of Washington (RCW), section 48.18.200(1)(b), which states that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition ... depriving the courts of this state of jurisdiction of action against the insurer ...." Technical asserted that the Washington statute should apply here because it is incorporated and its broker are in that state. (Doc. 12 at 2; ER 29:6-7.) Technical also offered that its president and co-owner Craig Swankosky lived and worked in Lake Stevens, Washington, but during oral argument Technical admitted that "it was within the boundaries of the state of Oregon that the defamation happened." (ER 42:13-16.) Nevertheless embracing Washington law, Technical urged the district court to follow *Department of Transportation v. James River Ins. Co.*, 176 Wn.2d 390, 292 P.3d 118 (2013), holding that RCW 48.18.200(1)(b) reverse-preempts the FAA by operation of the McCarran-Ferguson Act, 15 U.S.C. § 1012, which states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ...."

In reply, Philadelphia showed that applying Washington law would be inappropriate because all of the conduct giving rise to the underlying action had occurred in Oregon and California and there was no evidence that Technical conducted any relevant business operations in

Washington. (Doc. 15.) Philadelphia alternatively contended that, even if Washington law were applied, the *Department of Transportation* decision did not control in federal court and, in any event, was incorrectly decided.

After oral argument (ER 7-40), a magistrate judge issued proposed findings and recommendations concluding that the district court should apply Washington law. (ER 56-76.) The proposed findings and recommendations did not address the evidence regarding the location of Technical's headquarters and tortious conduct in California or the applicability of California law. (ER 57-69.) The proposed findings and recommendations recommended that the district court should "defer" to *Department of Transportation*'s reverse-preemption analysis and find that the FAA does not require arbitration of the coverage disputes here. (ER 69-76.) Over Philadelphia's timely objections (Doc. 32), on July 30, 2015, the district court adopted the proposed findings and recommendations without modification and denied the motion. (ER 4-6.) On August 27, 2015, Philadelphia timely appealed. (ER 1-3.)

## IV. STANDARD OF REVIEW.

The Ninth Circuit reviews "the denial of a motion to compel [arbitration] de novo." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). The Ninth Circuit also reviews "choice-of-law matters ... de novo." *Coneff v. AT&T Corporation*, 673 F.3d 1155, 1157 (9th Cir. 2012.) Thus, this Court should independently review each of the district court's rulings in denying Philadelphia's motion to compel arbitration.

7

# V. SUMMARY OF ARGUMENT.

The Federal Arbitration Act, or "FAA," requires district courts to enforce arbitration clauses that are valid and that encompasses a dispute at issue.  9 U.S.C. § 2.  Here, no one has disputed (or could dispute) the facial applicability of the arbitration provision to the coverage dispute presented.  Thus, the issue presented in this appeal is whether the provision is valid.

In independently evaluating validity, the narrowest ground for reversal is choice of law.  Choice of law matters here because there is no dispute that if measured under the laws of Oregon or of California— indeed, of most states in the country— the provision at issue would be valid and enforceable.  Under Washington law as construed by the district court, however, it would not.  Applying the choice-of-law factors set forth in Or. Rev. Stat. § 15.360(1), the facts of record that Technical sued on the coverage dispute in the District of Oregon based on underlying Oregon litigation in which an Oregon resident counterclaimed against Technical for its tortious conduct in Oregon and at its California headquarters all logically should have mandated application of either Oregon or California law and thus enforcement of the arbitration provision under the FAA.  The district court erred by relying only on the facts of record that the insurance policy was delivered to a post-office box of Technical's insurance broker in Washington and that Technical's president resided in Washington to conclude that Washington law should apply.  This Court therefore should independently determine that the law of either Oregon or California applies to the validity question and, on that narrow ground, reverse the order denying arbitration.

Even if the Court were to agree with the district court on choice of law, however, reversal would be proper because the district court erred by adopting the view of the decision in *Department of Transportation v. James River Ins. Co.*, 176 Wn.2d 390, 292 P.3d 118 (2013), as to the doctrine of reverse-preemption of state insurance laws under the federal McCarran-Ferguson Act, 15 U.S.C. § 1012(b).  In the first instance, the district court erred by deferring to the Washington court's application of federal statutes, which are subject to independent evaluation in federal courts.  *Humana, Inc. v. Forsyth*, 525 U.S. 299, 310 (1999).

On the merits, the district court erred in failing to recognize that the rationale from *Department of Transportation* does not apply to enforcement of arbitration clauses in federal courts.  The Washington court circumscribed its holding by its view of the procedures for enforcing arbitration decisions in Washington state courts, which the court described as merely "ministerial," *id.* at 398, thereby depriving Washington courts "of the jurisdiction to review the *substance* of the dispute."  *Id.* at 399 (original italics).  In federal courts, by contrast, 9 U.S.C. § 10(a)(4) does not preclude evaluation of the merits so drastically but instead permits district courts to vacate an arbitration award based on a "manifest disregard of law" where an arbitrator "recognized the applicable law and then ignored it.'"  *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (cit. omitted), *cert. den.,* 555 U.S. 801 (2008).  Because the jurisdiction of federal courts to enforce is not limited in the way that Washington views the limitations on its state courts, *Department of Transportation* does not apply and the provision here may enforced as it normally would be under the FAA.  The district court thus again erred and, exercising independent review, this Court

should reverse the order denying arbitration on this narrow ground.

Alternatively, if the Court elects to reach the merits of *Department of Transportation,* the Court may reverse on the broader ground that the Washington court there misapplied the McCarran-Ferguson Act. Federal courts are not bound by state decisions in this regard. *Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co.*, 359 U.S. 65 (1959). The state statute addressed here, RCW 48.18.200 (b)(1), says not a word about arbitration. Rather, it prohibits an insurance policy from including only a "condition ... depriving the courts of this state of jurisdiction of action against the insurer." It facially does nothing more than preclude a forum-selection clause calling for mandatory venue in another state or nation. By contrast, federal courts have long recognized that the FAA does not "oust the jurisdiction of the courts" but rather maintains their jurisdiction by "providing a forum for … enforcement" of arbitration provisions. *American Sugar Refining Co. v. The Anaconda*, 138 F.2d 765, 766-767 (5th Cir. 1943) (italics added), *aff'd*, 322 U.S. 42 (1944); see also *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 77 (1st Cir. 2000) (same). The district court erred in relying on *Department of Transportation* to conclude otherwise and, on this ground as well, this Court should reverse the order denying arbitration.

## VI. ARGUMENT.

**1.     The FAA requires district courts to enforce arbitration clauses that are valid and that encompasses a dispute at issue.**

Under the FAA a "written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 "is a congressional declaration of a *liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary*." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (italics added). "The effect of Section 2 is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id.* The FAA also generally withdraws "the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp v. Keating*, 465 U.S. 1, 10 (1984).

Insurers conducting business across state lines engage in interstate commerce to which the FAA applies. *See, e.g., United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 552-53 (1944) ("Insurers conducting business across state lines engage in interstate commerce"); *Group Life & Health Ins. Co. v. Royal Drug Co*., 440 U.S. 205, 219 (1979); *DeVoto v. Pac. Fid. Life Ins. Co*., 516 F.2d 1, 5 (9th Cir. 1975) ("Interstate insurance transactions fall within the definition of interstate commerce . . . ."). Thus the public policy favoring arbitration applies in the insurance context here. *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1382 (9th Cir. 1997).

Under the FAA, a court's role is limited to determining whether a valid agreement to arbitrate exists and, if it does, whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 719-20 (9th Cir. 1999). If the answer to both

questions is yes, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Dean Witter Reynolds, Inc. v.* Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (original italics). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.

The disputes in this action all turn on coverage issues under Technical's policy and are squarely within the scope of the arbitration provision. The FAA thus requires arbitration of the coverage disputes unless the provision is invalid.

Because there is no known dispute about the facial applicability of the clause to the dispute here, the issue presented in this appeal is whether the clause is valid. The lack of dispute about the validity of the clause under the laws of either Oregon or California means that the narrowest ground under which this Court can reverse the order denying arbitration is choice of law. We therefore address that ground first.

**2. The validity of the arbitration clause should be determined under Oregon or California law, which require arbitration under the FAA.**

Because this is a diversity action the Court must apply Oregon's choice-of-law rules to determine the applicable substantive law. *Fields v.*

*Legacy Health System*, 413 F.3d 943, 950 (2005). Oregon uses a "bifurcated approach in dealing with conflict of law issues," which requires "a threshold determination that there is an actual conflict between the law of the forum and that of another state." *Id*. at 951. To make this threshold determination a court must initially identify "the states that have a relevant connection with the transaction or the parties ...." Or. Rev. Stat. § 15.360(1).

The district court conceded that "Oregon has relevant connections with the parties to this case" because "[t]his coverage dispute stems from counterclaims against [Technical] filed by an Oregon resident in Oregon federal court" and Technical "elected to file this breach of contract action against [Philadelphia] in Oregon federal court." (ER 65.) The district court erred, however, by omitting that the counterclaims and this dispute about insurance defense and indemnity all arise from conduct at Technical's headquarters in Ventura, California, where Technical slandered Tharp. Like Oregon, therefore, California has relevant connections with the parties and transactions involved here.

Under either Oregon and California law, the arbitration clause is valid and thus enforceable under the FAA. In California, the very clause at issue here has been found enforceable. *Nieves v. Travelers Cas. Ins. Co. of Am.*, 2014 U.S.Dist.Lexis 174941, *20-26 (C.D. Cal. 2014). And the district court correctly observed that, under *Hoeft v. Rain & Hail, LLC*, 2001 U.S.Dist.Lexis 23586, *10 (D. Or. 2001), and *Anderson v. Washington Mut. Bank*, 2010 U.S.Dist.Lexis 124334 (D. Or. 2010), Philadelphia "should prevail on its motion to compel arbitration if Oregon law were to apply." (ER 68.)

But Oregon and California law may conflict with Washington law as to enforcement of a binding-arbitration clause under the FAA.[1]  In this regard, RCW 48.18.200(1)(b) states that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition ... depriving the courts of this state of jurisdiction of action against the insurer ...."  In *Department of Transportation v. James River Ins. Co.*, 176 Wn.2d 390, 395, 292 P.3d 118 (2013), the Washington Supreme Court interpreted RCW 48.18.200(1)(b) as rendering "arbitration agreements in insurance contracts void ...."  To escape the reach of the FAA, the court relied on the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance ...."  The *Department of Transportation* court held that the FAA was reverse-preempted under the McCarran-Ferguson Act because RCW 48.18.200(1)(b) "regulates the 'business of insurance' ...."  176 Wn.2d at 402.

Thus an actual conflict may exist between Oregon and California law on one hand and Washington law on the other hand.

Once an actual conflict of law has been identified, Or. Rev. Stat. § 15.360 states that selection of the law "most appropriate for a resolution"

---

[1] We say "may" rather than "does" conflict because Philadelphia argues alternatively under point 3.B. that, even if Washington law were found to govern validity, the district court applied it incorrectly because RCW 48.18.200(1)(b) would not preclude enforcement of an arbitration clause in a federal court.

of "an issue in a contract" is accomplished by identifying "the policies underlying any apparently conflicting laws of these states that are relevant to the issue" and by evaluating "the relative strength and pertinence of these policies in ... [m]eeting the needs and giving effect to the polices of the interstate and international systems" and in "[f]acilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states."

In performing this step, the district court focused primarily on the "place of negotiation" factor of § 48.18.360(1) to find that Technical had a "justified expectation" that the arbitration clause would not be enforced in Oregon. (ER 69.) In so concluding, the district court assumed that the insurance policy had been negotiated in Washington because, as the district court put it, Technical is "a Washington company with its principal place of business in Lake Stevens, Washington, and the parties entered into the insurance contract through a Washington broker." (ER 66.)

This place-of-negotiation analysis is incorrect because the characterization of Lake Stevens as Technical's principal place of business lacked any basis in the record, which is devoid of evidence that Technical performed any business operations in Lake Stevens, much less used what appears to be a private residence[2] for its principal place of

---

[2] The district court noted that Technical's "president and co-owner resides in Washington," ER 66, and an online-map search of the Lake Stevens address on Google maps shows what appears to be a single-family house in a residential neighborhood.

business. Instead, the unrebutted evidence showed that Technical's principal place of business is its headquarters in Ventura, California.

The district court also misconstrued statements of both attorneys at oral argument to try to bridge the evidentiary gap. The district court found that counsel for Philadelphia "acknowledged during oral argument that the situs of contract negotiations, 'a classical factor in terms of choice of law in a contract dispute setting,' took place in Washington or California." (ER 66, cit. omitted.) But the substance of counsel's point at the hearing was to the contrary, pointing to the fact that the policy shows that it was delivered to a mere insurance broker's P.O. Box in Snohomish (ER 149), that "Technical doesn't seem to actually have a business presence in Washington," and explaining that as "to the formation issue" the existence of "many activities happening either in Oregon or in California suggests ... that not much, if anything, happened in Washington." (ER 105:4-6, 18-21.) Technical's counsel agreed, conceding that "I don't think that the record says anything about the negotiation of the policy." (ER 29: 15-16.) Technical thus failed to meet its burden as to the place-of-negotiation factor in opposing the motion to compel arbitration; the district court wrongly relieved Technical of that burden by simply assuming that Technical's principal place of business and the "situs of contract negotiations" were both in Washington. The district court accordingly erred in finding that the place-of-negotiation factor "weigh[ed] heavily in favor of applying Washington law." (ER 66.)

The district court also found "militating in favor of the application of Washington state law" its conclusions that the arbitration clause "calls for arbitration in Snohomish County, Washington" and "provides that

16

Snohomish County's local rules of law as to arbitration procedure and evidence will apply," and that Philadelphia "never performed the contract in Oregon, as it denied its duty to defend and indemnify Plaintiff against Tharp's counterclaims" but "contract performance did occur in Washington, inasmuch as insurance premiums were paid by a Washington corporation to [Philadelphia]." (ER 66.) None of these points suffices. No evidence was offered to show where Technical issued payment for its premium. But it remains undisputed that Technical seeks performance in Oregon in the form of costs of defense and indemnity for the underlying action in Oregon. Moreover, Philadelphia agreed to arbitrate in either Oregon, where Technical had sued it, or Washington (ER 121-122, 201 n. 1); the provisions in the arbitration clause regarding the rules of procedure and evidence in the arbitration hearing are thus neutral under Or. Rev. Stat. § 15.360(1).

Last, the district court noted that although "the Washington Legislature enacted a statute intended specifically to protect the right of policyholders to bring an original action against insurers in Washington court ... [t]his court has not been directed to, nor has it identified, any legal authority indicating that the Oregon Legislature has enacted an equivalent statute to protect the policyholders of this state." (ER 69.) The district court apparently viewed this "important distinction" as a sign that Oregon has no policy as to arbitration of insurance-coverage disputes and the "needs" of and giving effect to "interstate and international systems ...." ORS § 15.360(3)(a). But as previously noted, the district court recognized that under *Hoeft v. Rain & Hail*, 2001 U.S.Dist.Lexis 23586, Oregon law would apply the FAA to require enforcement of the arbitration clause here. (ER 67.) Deference to the FAA evinces no lack

17

of policy regarding enforcement, as the district court improperly concluded; rather, Oregon simply embraces the federal rule. And even if the district court harbored doubts as to Oregon's policy it was required to resolve those doubts "concerning the scope of arbitrable issues ... in favor of arbitration ...." *Moses H. Cone*, 460 U.S. at 24-25. Having filed its action in Oregon, Technical had no justifiable expectation that Oregon's policy regarding arbitration clauses in insurance policies would not apply here.

The district court's reasons for avoiding rejecting both Oregon law and California law in favor of Washington law do not survive scrutiny. In light of the record, the district court should have applied Oregon law or, if it determined that another state's law should apply, California law, under either of which the result would be the same and the arbitration clause is valid and must be enforced under the FAA. As noted earlier, this Court must independently decide this choice-of-law question, *Coneff,* 673 F.3d at 1157, and a determination that Oregon or California law applies to the question of validity affords the simplest and narrowest ground for reversal of the district court's order denying arbitration.

If, however, this Court were to conclude that Washington law does apply to the issue of validity, reversal still would be warranted because the district court incorrectly applied that law to the validity question here. We turn to that issue below.

**3.** **The district court erred by adopting and applying the view of the Washington decision in *Department of Transportation* to the McCarran-Ferguson Act and the FAA.**

    **A.** **The district court erroneously deferred to the Washington Supreme Court's interpretation and application of the McCarran-Ferguson Act.**

The district court correctly observed that it was not "*bound* by the Washington Supreme court's decision" in *Department of Transportation v. James River Ins. Co.*, 176 Wn.2d 390 (2013), for the purpose of "determining whether the McCarran-Ferguson Act shields RCW 48.18.200(1)(b) from preemption by the FAA." (ER 69, italics added.) But the court elected to "defer" to the *Department of Transportation* court's conclusion that the FAA is subject to reverse preemption under the McCarran-Ferguson Act. (ER 69.) The court gave two rationales for this deference, neither of which suffices to support it.

First, the district court extracted a single case, *McKnight v. Chicago Title Ins. Co., Inc.*, 358 F.3d 854 (11th Cir. 2004), from a footnote citing eight decisions in *Department of Transportation,* 176 Wn.2d at 402 n. 5, and concluded that *McKnight* was "instructive on the issue of how much weight this Court should give to" *Department of Transportation* on the issue of reverse preemption under the McCarran-Ferguson Act. (ER 71.) But the Eleventh Circuit in *McKnight* did not "defer to" but instead turned to state-court decisions only after the it had *independently* analyzed whether a provision of the Georgia Arbitration Act, Ga. Code Ann. § 9-9-2(c), excepted insurance contracts from the general rule requiring enforcement of arbitration clauses. 358 F.3d at 858 ("Fifth and finally, Georgia, speaking through one of its courts, has itself characterized § 9-9-2(c)(3) as a law enacted to regulate the business of

insurance"). The district court here moved in the opposite direction; it *began* with a detailed discussion of the Washington decision in *Department of Transportation* (ER 68-69), proceeded to conclude at length that it would simply defer to the Washington court (ER 70-73), and only then offered an abbreviated and apparently superfluous discussion of the McCarran-Ferguson Act. (ER 74-76.) *McKnight* plainly does not validate such an approach.

Second, in support of its decision to defer, the district court concluded that this Court in *Ojo v. Farmers Group, Inc.*, 600 F.3d 1201 (9th Cir. 2010), placed "considerable emphasis on the views of a state's highest court in the context of the McCarran-Ferguson Act." (ER 72.) As with *McKnight,* the district court misread *Ojo.* There this Court considered neither arbitration nor the FAA but rather whether the federal Fair Housing Act's prohibition on "undisclosed" rating factors that disparately affect minorities applying for homeowner insurance was reverse preempted under the McCarran-Ferguson Act because of a Texas state statute allegedly allowing the use of "credit scoring in setting insurance rates." *Id*. at 1209. As a threshold matter, however, the Court noted that the question of whether the Texas law actually permitted the use of disparate-impact rating factors was unsettled, so that the "appropriate course of action [was] to certify this issue" of Texas law—not of federal law—"to the Supreme Court of Texas," after which this Court itself would decide the "remaining dispositive question" of reverse-preemption under the McCarran-Ferguson Act. *Id*. at 1210. The district court thus erred by treating the certification of a state-law issue in *Ojo* as eliminating a federal court's duty to decide federal law under the McCarran-Ferguson Act.

In fact, application of the McCarran-Ferguson Act and the FAA present federal questions and federal interpretations of federal questions must necessarily supersede those of state courts. It is axiomatic, after all, that *"*Congress intended the federal courts 'to have the final word on questions of federal law.'" *Bland v. Fessler*, 88 F.3d 729, 738 (9th Cir. 1996) (cit. omitted). For example, in *Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co.*, 359 U.S. 65 (1959), the Supreme Court addressed whether the McCarran-Ferguson Act permitted state insurance regulations to add to federal rules for certain life-insurance products under the Securities Act of 1933, 15 U. S. C. § 77a, and the Investment Company Act of 1940, 15 U. S. C. § 80a. Holding that it did not, the Supreme Court explained that "*how the States may have ruled is not decisive*" because "the meaning of 'insurance' or 'annuity' under these Federal Acts is a federal question." 359 U.S. at 69 (italics added); *accord, Patenaude v. Equitable Life Assur. Soc'y*, 290 F.3d 1020, 1026-1027 (9th Cir. 2002).[3] In this regard, "when federal law does not *directly conflict* with state regulation, and when application of the federal law would not frustrate any *declared state policy* or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Humana, Inc. v. Forsyth*, 525 U.S. 299, 310 (1999) (italics added).

The district court's task, then, was to determine whether applying the FAA here to enforce an arbitration clause agreed by the parties would "directly conflict" with a "declared state policy" of Washington governing insurance. The district court made no attempt to perform this

---

[3] *Partially overruled on other grounds, Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009).

task and thus erred.  Had it done so, the district court should have enforced the arbitration clause.

Two points confirm the district court's error in this regard.  The narrower of the two is that the district court erred in adopting the rationale of the Washington Supreme Court in finding arbitration clauses unenforceable in Washington's state courts; that rationale does not apply to enforcement of arbitration clauses in federal courts where, as this Court has explained, district courts have broader jurisdiction to review the merits of arbitration awards.  We thus first address this narrow point before turning to the broader issue of the legal correctness of the Washington court's application of the federal acts involved here—a ruling to which this Court is not bound.

### B.    The reasoning in *Department of Transportation* does not apply to enforcement of arbitration clauses in federal courts.

In considering the impact of *Department of Transportation* on Philadelphia's motion to compel arbitration, we first assume (without conceding) not only that Washington law applies but also that the court in *Department of Transportation* correctly applied the McCarran-Ferguson act to the Washington statute involved to reverse-preempt the FAA.  Even so, the reasoning in *Department of Transportation* does not apply to this case, where the defendant sought to compel arbitration not in a Washington state court but rather in a response to a suit in federal district court.

This distinction between enforcement of arbitration in federal courts and enforcement in Washington state courts is key to the issue here

because the court's reasoning in *Department of Transportation,* 176 Wn.2d 390, depended on the limited review of arbitration decisions available in Washington state courts.  Recall that the issue there was whether RCW 48.18.200(1)(b)—which prohibits an insurance policy issued in Washington from including a "condition ... depriving the courts of this state of jurisdiction of action against the insurer"—prohibited arbitration clauses in policies.  The court therefore examined the Washington Arbitration Act and concluded that, under Washington law, a court's jurisdiction in arbitration cases was limited to a "special proceeding to confirm an arbitration award" in which "the jurisdiction of the court is limited."  176 Wash.2d at 398.  In such a proceeding, the Washington court reasoned, a court is asked only "to render judgment on the award previously made by the arbitrators," a task it described as a "mere ministerial duty."  *Id*. (cits. & quots. omitted.)  In that court's view, compelling arbitration under the FAA would have deprived Washington courts "of the jurisdiction to review the *substance* of the dispute between the parties."  176 Wn.2d at 399 (original italics).  Because an arbitration clause would deprive a Washington state court of power in this way, the court concluded that reverse-preemption under the McCarran-Ferguson Act applied and thus that RCW 48.18.200(1)(b) prevented enforcement of an arbitration clause and saved the Washington statute from preemption under the FAA.

The court's stated reasoning in *Department of Transportation,* however, does not apply in federal court because a federal court's power to review an arbitration clause differs from the sort of ministerial Washington review described in *Department of Transportation.*  It is more robust.  This Court has interpreted the FAA, 9 U.S.C. § 10(a)(4), to

23

permit district courts to vacate an arbitration award that is based on a "manifest disregard of law," which exists when it is "'clear from the record that the arbitrator[] recognized the applicable law and then ignored it.'" *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (cit. omitted), *cert. den.,* 555 U.S. 801 (2008). Indeed, review of arbitration awards in the Ninth Circuit is broader than in other circuits. As the Eleventh Circuit has pointed out, the "Second and Ninth Circuits have taken a different approach, treating manifest disregard of the law not as an additional, nonstatutory ground for vacatur, but instead as a judicial interpretation of the district court's power under § 10(a)(4) to vacate and award where the arbitrator 'exceeded [his] powers' or 'so imperfectly executed them that a mutual, final, and definite award … was not made.'" *Frazier v. Citifinancial Corp., LLC*, 604 F.3d 1313, 1323 (11th Cir. 2010) (cit. omitted).

The district court's power to review an arbitration award under *Comedy Club,* 553 F.3d 1277, thus differs from that described in *Department of Transportation,* which concluded that a Washington court simply cannot "review of the substance of disputes between insurers and insureds." 176 Wn.2d at 399. Because district courts within the Ninth Circuit instead retain the power under the FAA to review the substance of arbitration awards under *Comedy Club*, the rationale the Washington court adopted for applying reverse-preemption in *Department of Transportation* cannot apply to a motion to compel arbitration brought in federal district court—even if Washington law were deemed to apply. Because that rationale does not apply to override the FAA under the McCarran-Ferguson Act, the district court erred in adopting that rationale to deny Philadelphia's motion to compel.

24

On this narrow ground, and without confronting the merits of the Washington decision in *Department of Transportation,* this Court can and should reverse the district court's order and direct the court to order arbitration under the FAA of Technical's claims for coverage under Philadelphia's policy.

> ### C. The district court erroneously followed *Department of Transportation,* in which the Washington court incorrectly applied the McCarran Ferguson Act.

Even if Washington law were found to apply to this dispute, and even if this Court were to conclude that district courts in this Circuit lack any power greater than Washington courts to review arbitration awards, the order denying arbitration still should be reversed because the decision upon which it is based, *Department of Transportation,* 176 Wn.2d 390, incorrectly applied McCarran-Ferguson reverse-preemption to the FAA and RCW 48.18.200(b)(1). Because the district court deferred to "the judgment of the Washington Supreme Court" on this issue (ER 75), the district court simply did not address whether that court's conclusion was legally correct. As noted earlier, the question of whether the McCarran-Ferguson Act requires reverse-preemption is normally "a federal question," such that *"how the States may have ruled is not decisive." Sec. & Exch. Comm'n*, 359 U.S. at 69.

In considering this point, we first consider whether application of the FAA to compel arbitration here would "directly conflict" with RCW 48.18.200(b)(1) and a "declared state policy;" if not, then "the McCarran-Ferguson Act does not preclude its application." *Humana, Inc.*, 525 U.S. at 310.

In this regard, RCW 48.18.200 (b)(1) does nothing more than prohibit an insurance policy from including a "condition ... depriving the courts of this state of jurisdiction of action against the insurer." It focuses on jurisdiction alone; on its face, it precludes a forum-selection clause calling for mandatory venue in another state or some foreign nation. *See, e.g., Cedar Grove Composting, Inc. v. Ironshore Specialty Ins. Co.*, 2015 U.S.Dist.Lexis 71256 *9 n. 1 (W.D. Wa. 2015) (invalidating a non-Washington forum-selection clause under RCW 48.18.200 (b)(1).)

This state statute, however, says not one word about *arbitration*. In this respect it differs markedly from the statute addressed in the Eleventh Circuit decision upon which the district court's conclusion relies so heavily, *McKnight*, 358 F.3d 854. (ER 71.) The state statute there was the Georgia Arbitration Act, Ga. Code Ann. § 9-9-2(c), and the court independently analyzed whether a provision of that Act excepted insurance contracts from enforcement as part of a law enacted to regulate the business of insurance within the McCarran-Ferguson Act. 358 F.3d at 858.

It is a straightforward matter to so hold in the context of a state arbitration act that expressly carves out insurance contracts from enforcement. It is quite another to conclude, as the district court did here, that an insurance statute discussing jurisdiction but saying nothing whatsoever about arbitration should also be reverse-preempted. Such a state statute cannot be said, under *Humana,* 525 U.S. at 310, to "directly conflict" with the FAA so as to trigger reverse-preemption under the McCarran-Ferguson Act and thus prevent enforcement of an arbitration clause. To rule otherwise would run afoul of the "liberal federal policy

favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" and ignores the Supreme Court's mandate that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

The fact that RCW 48.18.200 (b)(1) expressly limits its reach to "jurisdiction of action" highlights a separate error by the district court. Unlike the Washington court's conclusion about jurisdiction in *Department of Transportation,* federal courts applying the FAA have held that arbitration clauses do *not* remove a federal court's jurisdiction. It has long been recognized that the FAA "was passed not to oust the jurisdiction of the courts but to provide for *maintaining* their jurisdiction while at the same time recognizing arbitration agreements as affirmative defenses and providing a forum for their specific enforcement." *American Sugar Refining Co. v. The Anaconda*, 138 F.2d 765, 766-767 (5th Cir. 1943) (italics added), *aff'd*, 322 U.S. 42 (1944). Rather, it is logical in such settings "for a court's jurisdiction to remain intact and crucial to the overall arbitration scheme even while it honors the parties' voluntary agreement to deal with the merits outside the courtroom." *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 77 (1st Cir. 2000). The district court rejected *DiMercurio* in a footnote (ER 75 n. 5) and acknowledged *American Sugar Refining* not at all.

By deferring to the state-court decision in *Department of Transportation,* the district court gave short shift to the rules that federal courts are supposed to apply when considering claims of reverse-preemption under the McCarran-Ferguson Act. Evaluating doubts about the scope of arbitrability broadly in favor of arbitration, it becomes clear that the McCarran-Ferguson Act was not intended to prevent the broad

principles enunciated in the FAA from enforcement merely because a state insurance statute—RCW 48.18.200 (b)(1)—on its face prohibits insurance policies from containing foreign forum-selection clauses but nowhere mentions arbitration. The district court erred by ordering otherwise.

The district court should have ordered the parties to arbitrate their coverage disputes under 9 U.S.C. § 2. In performing its independent review of the district court's order, *Cox,* 533 F.3d at 1119, this Court should correct the district court's error by reversing the order with instructions to grant Philadelphia's motion to compel arbitration.

## VII. CONCLUSION.

Whether on grounds narrow or broad, the district court's order denying arbitration should be reversed. The narrowest ground is choice of law because the only reason for denying arbitration was the district court's selection of an anomalous rule from *Department of Transportation,* 176 Wn.2d 390, finding such clauses invalid, whereas the laws of Oregon or California—the other options from which to select under Or. Rev. Stat. § 15.360(1)—treat such clauses as valid and enforceable under the FAA. Because appellee Technical sued Philadelphia in the District of Oregon based on underlying litigation also in Oregon asserting employment and defamation claims by an Oregon resident alleging tortious conduct by Technical at its California headquarters, the record logically should have mandated application of either Oregon or California law. In independently reviewing the facts, this Court should apply either Oregon or California law to the validity question and reverse.

If the Court elects to extend its independent review more broadly to address Washington law on the issue of validity, the Court still should reverse because the district court erred by adopting the view of the court in *Department of Transportation* as to the doctrine of reverse-preemption of state insurance laws under the federal McCarran-Ferguson Act, 15 U.S.C. § 1012(b). The district court erred by deferring to that court's application of federal statutes, which should be evaluated independently in federal courts. *Humana, Inc.*, 525 U.S. at 310. The rationale from *Department of Transportation* does not apply to enforcement of arbitration clauses in federal courts because the jurisdiction of federal courts to enforce arbitration awards is not limited in the way the Washington court viewed the limitations on that state's courts.

Alternatively, the Washington court in *Department of Transportation* misapplied the McCarran-Ferguson Act—again, a holding that does not bind this Court. *Sec. & Exch. Comm'n v. Variable Annuity*, 359 U.S. 65. The state statute construed in *Department of Transportation* facially does no more than preclude a forum-selection clause calling for mandatory venue in another state—it says nothing about arbitration—whereas federal courts recognize that the FAA does not oust the courts' jurisdiction but rather maintains it. *American Sugar Refining Co.*, 138 F.2d at 766-767.

On these grounds too this Court can and should reverse the order denying arbitration with directions to order arbitration to proceed in accordance with the parties' agreement.

*Respectfully submitted*,

NIELSEN, HALEY & ABBOTT LLP
/S/ JAMES C. NIELSEN
/S/ THOMAS H. NIENOW

Attorneys for Defendant and Appellant
PHILADELPHIA INDEMNITY INSURANCE COMPANY

June 8, 2016

## STATEMENT OF RELATED CASES UNDER CIRCUIT RULE 28-2.6

There are no known related cases under Ninth Circuit Rule 28-2.6.

CERTIFICATION OF COMPLIANCE UNDER CIRCUIT RULE 32-1.

Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the undersigned certifies that Appellant's Opening Brief is proportionally spaced, has a type face of 14 points or more, and contains 7,637 words.

By: /s/ Thomas H. Nienow
JAMES C. NIELSEN
THOMAS H. NIENOW

Attorneys for Defendant and Appellant
Philadelphia Indemnity Insurance Company

| 9th Circuit Case Number(s) | 15-35683 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jun 8, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) /s/ Lawrene M. Morgan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)